```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE WESTERN DISTRICT OF PENNSYLVANIA


FRANCIS H. AZUR,             )
                             )
            Plaintiff,       )   Civil Action No. 06-1047
                             )
     v.                      )   Chief Judge Ambrose
                             )   Magistrate Judge Caiazza
MBNA CORPORATION,            )
                             )
            Defendant.       )
```

## MEMORANDUM AND ORDER

### I.   MEMORANDUM

For the reasons that follow, the Plaintiff's request to take discovery in connection with the Defendant's Motion to Compel Arbitration (Doc. 6) will be granted as stated herein.[1]

In this federal Truth in Lending Act case, the Plaintiff Francis H. Azur seeks to recover charges fraudulently made by his former executive assistant Michele Vanek ("Ms. Vanek") to an MBNA credit card issued in his name. *See generally* Compl. (Doc. 1).[2] The Defendant argues that, pursuant to an arbitration clause added to his credit card agreement in December 1999, the Plaintiff must proceed to arbitration on his claims. *See generally* Def.'s Mot. (filed under Doc. 6).

---

[1]  The Plaintiff's request comes in his Surreply to the Defendant's Motion to compel arbitration. *See* Doc. 20 at 2.

[2]  The Defendant indicates its correct identity is "FIA Card Services, N.A. s/b/m to Bank of America, N.A. s/b/m to MBNA America Bank, N.A." *See* Def.'s Br. (filed under Doc. 6) at 1.  For convenience, the undersigned will refer to this entity as "MBNA" or "the Defendant."

The Defendant asserts that this matter is governed by the Federal Arbitration Act and that, presuming Mr. Azur agreed to the arbitration clause, it is a valid and binding provision. Plaintiff's counsel do not meaningfully refute these assertions, which otherwise are supported in the law.  *See generally, e.g.*, Def.'s Reply Br. (Doc. 11) at 4-5 (citing numerous federal decisions upholding MBNA and other credit card issuers' inclusion of arbitration clause through "change in terms" or "amendment" provisions).  Rather, the Plaintiff resists the Defendant's Motion largely on evidentiary grounds.

Counsel first highlights the affidavit of MBNA vice president Margaret Simpkins ("Ms. Simpkins"), which purportedly indicates Mr. Azur has had "only one account number [issued] in [his] name since 1986."  *See* Pl.'s Opp'n Br. (Doc. 9) at 2.  According to the Plaintiff, the Defendant's documentation reveals that at least three MBNA account numbers have been issued since 1986, ones ending in 1389, 7854, and 1521.  *See id.*

Defense counsel replies that this issue is a red herring, and the court is inclined to agree.  The Plaintiff's Complaint specifically identifies the account number ending in 1389 as the one involving fraudulent charges.  *See* Compl. at ¶ 8.[3]

---

[3]  In his Surreply, the Plaintiff asserts for the first time that "Ms. Vanek's fraudulent activity occurred on at least two [MBNA] account numbers associated with Mr. Azur."  *See* Doc. 20 at 1.  In support of this claim, counsel points to the Affidavit of Mr. Azur, filed as an Exhibit to his opposition brief.  *See* Doc. 9-1.

Sensibly, Ms. Simpkins' affidavit restricts itself to the relevant account number, and Plaintiff's counsel appears to misinterpret her statements in suggesting that only one account has been opened since 1986. *See* Aff. of M. Simpkins (Doc. 6-2) at ¶ 4 ("Mr. Azur [has] held one [MBNA] . . . credit card account, account number 5490 9916 6626 1389 since 1986."). A more likely accurate interpretation of her statement would be that Mr. Azur has held only one account dating back to the year 1986, the one ending in 1389. The establishment of that account well preceded Ms. Vanek's tenure, thereby defeating the Plaintiff's theory that she fraudulently opened the account in his name. *See generally* Def.'s Reply Br. at 3.

These things being said, the Defendant's evidence certainly could stand to be tightened up to some degree. Aside from the potential ambiguity in Ms. Simpkins' affidavit, the only documentary evidence showing that the 1389 account was opened in 1986 is affixed to MBNA's reply brief, and it is not authenticated by affidavit. *See* Ex. B to Def.'s Reply Br. (Doc. 11-3) (computerized summary of account ending in 1389,

---

Mr. Azur's affidavit does <u>not</u> indicate that two accounts were fraudulently charged, nor does the Complaint make reference to any account other than the one ending in 1389. The Plaintiff, moreover, has not sought leave to amend his pleadings to include allegations of fraud regarding other account number(s). Even if he had, under the circumstances presented the court would not be inclined to grant leave for amendment. *Cf.* Pl.'s Surreply (alleging fraudulent activity in other accounts for first time, in effort to avoid submission of claims to arbitration).

indicating an "open d[a]t[e]" of "08/14/86"). And while it may be inferred from Ms. Simpkins' affidavit that the arbitration amendment corresponded to the 1389 account, the potential ambiguity created by her failure to mention the other accounts has opened the door to questions regarding whether the amendment notice related to the relevant account. *See* Pl.'s Opp'n Br. at 2 ("there is no evidence as to which account number(s) [the arbitration amendment] . . . related").

Furthermore, the court does not believe it proper to require the Plaintiff to oppose the Defendant's Motion without the benefit of discovery. Counsel represent that they have not received documents from MBNA relevant to the disputes at hand. *See* Pl.'s Opp'n Br. at 4 (despite requests for documentation, Plaintiff has received "only select statements prior to 2003"). And while Ms. Simpkins' current affidavit and the computer account record attached to MBNA's reply (if properly authenticated) in other circumstances probably would suffice, it is difficult to imagine how Mr. Azur can refute such evidence without being afforded an opportunity to investigate the facts.

For these reasons, the Plaintiff will be permitted to take limited, expedited discovery to address the specific issues of when the account ending in 1389 was opened, and whether the 1999 notice of amendment related to that account.

Discovery will be so limited because, if account 1389 was opened before Ms. Vanek began working for the Plaintiff and the 1999 arbitration amendment related to that account, the undersigned will recommend that the District Court find the Plaintiff bound to arbitration.

Establishing that account 1389 was created in 1986 will put to bed the Plaintiff's suggestion that Ms. Vanek opened the relevant account.  *Cf.* Pl.'s Opp'n Br. at ("Mr. Azur is currently investigating whether Ms. Vanek fraudulently opened a new MBNA account in [his] name or had a new card issued and intercepted that card.").[4]

If the 1999 amendment notice related to account 1389, moreover, Mr. Azur is presumed to have received the notice and his failure to opt out renders the provision enforceable.  *See* discussion *supra*; *see also, e.g.*, <u>Venezie v. MBNA America Bank</u>, 2006 WL 2092567, *6 (W.D. Pa. Jul. 26, 2006) (Cercone, J.; Mitchell, M.J.) ("MBNA may unilaterally amend credit card agreements if, as here, [it] provide[s] notice to credit cardholders of the proposed amendment, as well as an opportunity to opt out").  The Defendant has put forth evidence that notice of the amendment was mailed to Mr. Azur and not returned as

---

[4]   Even assuming Ms. Vanek had a new card issued under an existing account, this would not change the court's analysis.  If the relevant account was establish prior to Ms. Vanek's tenure, the issuance of a new card would not change the fact that Mr. Azur entered the card agreement and remains bound by it.

undelivered.  *Compare* Aff. of M. Simpkins at ¶¶ 12-13 (MBNA's "customer information files indicate that the Amendment was mailed to Mr. Azur," and he "was not among the account holders whose Amendment was returned as undeliverable") *with* <u>Kurz v. Chase Manhattan Bank USA, N.A.</u>, 319 F. Supp.2d 457, 463-64 (S.D.N.Y. May 24, 2004) ("[i]t is well settled that evidence of proper mailing gives rise to a rebuttable presumption of receipt," and "[a]ctual receipt need not be proven" where "circumstantial evidence, [such as] evidence of [the sender's] customary mailing practices," establishes same) (numerous citations and internal quotations omitted).

By implication, Mr. Azur admits that he cannot refute the Defendant's evidence of mailing through anything other than speculation.  *See* Pl.'s Opp'n Br. at 2 (assuming 1999 amendment was sent to Mr. Azur, it "would have [been] intercepted" by Ms. Vanek).  Plaintiff's counsel, moreover, has failed to identify legal authority showing that Mr. Azur's having authorized Ms. Vanek to open his mail somehow relieves him of the presumption the amendment notice was received.  *Cf.* Compl. at ¶ 7 ("[a]s Executive Assistant to Mr. Azur, Ms. Vanek had responsibility for . . . opening mail that was addressed to [him]").  If such precedent exists, it would be surprising indeed.

For these reasons, discovery will be limited to the issues identified above. In light of the Plaintiff's having first requested discovery in his sur-reply, moreover, any complaints regarding the established restrictions will not be well founded.

Finally, counsel are directed to act in reasonable, good faith cooperation to ensure that the discovery is completed within the expedited time frame identified below.

Consistent with the above Memorandum, the court hereby enters the following:

## II.  ORDER

The Plaintiff's request to take discovery in connection with the Defendant's Motion to Compel (*see* Doc. 20 at 2) is **GRANTED** to the following extent:  the Plaintiff shall have thirty (30) days from the date of this Order to take limited discovery regarding: (a) when the account ending in 1389 was opened; and (b) whether MBNA's 1999 notice of the arbitration amendment related to the same account. Within eleven (11) days of the close of discovery, the parties may cross-file supplemental briefs and/or evidentiary materials regarding what has been discovered. Thereafter, the undersigned will file a report and recommendation addressing the Defendant's Motion to Compel Arbitration.

THESE THINGS ARE SO ORDERED.


January 10, 2007

Francis X. Caiazza
U.S. Magistrate Judge

cc (via email):

Kurt A. Miller, Esq.
Kevin L. Barley, Esq.
Kevin K. Douglass, Esq.
Joe N. Nguyen, Esq.
Perry A. Napolitano, Esq.
Felicia Y. Yu, Esq.