**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| FRANCIS H. AZUR, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 06-1047 |
| | ) | |
| v. | ) | Chief Judge Ambrose |
| | ) | Magistrate Judge Caiazza |
| MBNA CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

### I.  OPINION

For the reasons that follow, the Defendant's Motion to
compel arbitration (Doc. 6) will be granted, and this case will
be stayed under the Federal Arbitration Act, 9 U.S.C. § 3.

The legal issues presented by the Defendant's Motion are
summarized in the magistrate judge's Orders granting the
Plaintiff limited, expedited discovery.  In relevant part, the
first decision stated:

> In this federal Truth in Lending Act case,
> the Plaintiff Francis H. Azur seeks to
> recover charges fraudulently made by his
> former executive assistant Michele Vanek
> ('Ms. Vanek') to an MBNA credit card issued
> in his name. . . .  The Defendant argues
> that, pursuant to an arbitration clause added
> to his credit card agreement in December
> 1999, the Plaintiff must proceed to
> arbitration on his claims. . . .
>
> The Defendant asserts that this matter is
> governed by the Federal Arbitration Act and
> that, presuming Mr. Azur agreed to the
> arbitration clause, it is a valid and binding
> provision.  Plaintiff's counsel do not
> meaningfully refute these assertions, which
> otherwise are supported in the law. . . .

Rather, the Plaintiff resists the Defendant's
Motion largely on evidentiary grounds. . . .

[For good cause shown,] the Plaintiff [was]
permitted to take limited, expedited
discovery to address the specific issues of
when [his] account ending in 1389 was opened,
and whether the 1999 notice of amendment
related to that account.   Discovery [was] so
limited because, if account 1389 was opened
before Ms. Vanek began working for the
Plaintiff and the 1999 arbitration amendment
related to that account, . . . the Plaintiff
[is] bound to arbitration.

Establishing that account 1389 was created in
1986 will put to bed the Plaintiff's
suggestion that Ms. Vanek opened [it]. . . .
If the 1999 amendment notice related to
account 1389, moreover, Mr. Azur is presumed
to have received the notice and his failure
to opt out renders the provision enforceable.
. . .

The Defendant has put forth evidence that
notice of the amendment was mailed to Mr.
Azur and not returned as undelivered. . . .
[I]t is well settled that evidence of proper
mailing gives rise to a rebuttable
presumption of receipt, and [a]ctual receipt
need not be proven where circumstantial
evidence, [such as] evidence of [the
sender's] customary mailing practices,
establishes [the] same . . . .

By implication, Mr. Azur admits that he
cannot refute the Defendant's evidence of
mailing through anything other than
speculation.   [Specifically, the Plaintiff's
Opposition Brief states that,] assuming [the]
1999 amendment was sent to Mr. Azur, it would
have [been] intercepted by Ms. Vanek . . . .
Plaintiff's counsel, moreover, has failed to
identify legal authority showing that Mr.
Azur's having authorized Ms. Vanek to open
his mail somehow relieves him of the
presumption the amendment notice was
received. . . .   If such precedent exists, it
would be surprising indeed.

M.J.'s Opinion & Order dated Jan. 10, 2007 (Doc. 21) at 1-2, 4-6
(footnotes, some internal quotations, and citations to record and
applicable law omitted).

The parties' initial discovery cleared up some ambiguity
regarding the assignment of multiple MBNA account numbers to
Mr. Azur:

> [T]he Defendant initially stated that
> Mr. Azur [has] held one [MBNA] . . . credit
> card account, account number 5490 9916 6626
> 1389[,] since 1986. . . . MBNA[, however,]
> did little to explain why its documentation
> revealed at least three account numbers, ones
> ending in 1389, 7854, and 1521. . . .
>
> [T]he Defendant [has recently shown, though,
> that] . . . . Mr. Azur has had only one
> credit card account with MBNA . . ., which
> was opened on August 14, 1986 . . . . [under
> an] account number ending in '7854.'
>
> The account received a product upgrade on
> August 2, 2003, which resulted in it being
> assigned a new account number ending in
> '1389.' The old number was simply overlaid
> by the new number on the same account.
>
> On March 8, 2006, the account was assigned a
> new number ending in '1521,' in response to
> Mr. Azur's fraud claim. . . .
>
> Counsel . . . asserts that the product
> upgrade in August 2003 is insignificant, as
> the Defendant's sworn statements establish
> that MBNA's 1999 arbitration amendment was
> sent to all [account] holders then existing.
> . . .
>
> Again, the Defendant has made a fairly
> compelling case that Mr. Azur is bound to
> arbitration. And while MBNA's more recent
> clarifications are largely consistent with
> its previous explanations, its lack of prior

-3-

> clarity arguably has left the Plaintiff at a
> disadvantage in resisting the Defendant's
> Motion to compel arbitration. . . .

M.J.'s Order dated Apr. 24, 2007 (Doc. 27) at 2-3 (footnotes,
some internal quotations, and citations to record and applicable
law omitted).

Further discovery was permitted, but it was limited in scope
to: (a) the nature of the August 2003 product upgrade and
whether it contained new terms and conditions or dispute
resolution procedures; and (b) the Defendant's sworn statement
that the 1999 arbitration amendment was sent to all then-existing
account holders. *Id.* at 3. The additional discovery has been
taken, and the parties have filed supplemental briefing and
evidentiary materials. *See* Docs. 28 & 29.

The Defendant finally has proven that the Plaintiff is bound
to arbitration. Its evidentiary materials demonstrate that
Mr. Azur has held only one account with MBNA, which was opened
in 1986. *See* Aff. of M. Simpkins (Ex. A to Doc. 29) at ¶¶ 5-6
(citing attached evidentiary materials). In 1999, the Defendant
mailed to all of its account holders an amendment adding the
arbitration clause. *Id.* at ¶¶ 14-17. Mr. Azur's amendment was
not returned as undelivered, *id.* at ¶ 18, and he cannot rebut the
legal presumption he received it. *See* discussion *supra*; *see also*
*id.* (noting Mr. Azur admits he cannot refute Defendant's evidence
of mailing, having stated Ms. Vanek would have intercepted it).

-4-

There is no evidence that MBNA's product upgrade in August 2003, or its assignment of a new account number in March 2006, modified or deleted the arbitration provision. To the contrary, the Defendant has provided sworn statements, on personal knowledge, that the arbitration provision remained in full force. *See* Def.'s Responses to Pl.'s 2d Set of Interrogs. (filed under Ex. B to Doc. 29) at 3 (2003 upgrade "did not eliminate the requirement that Mr. Azur arbitrate his claims"; "[t]he terms of the cardholder's agreement continue notwithstanding the change in the identifying [account] number," whether occasioned by product upgrade or concerns regarding fraudulent charges); *see also id.* at 5 (Verification of Defendant's response, made under oath by MBNA agent Eric Pyle); Simpkins Aff. at ¶¶ 8-9 (for purposes of 2003 upgrade, "[t]he old [account] number was simply overlaid by the new number on the same account" and, "[w]hen a product is upgraded, . . . the terms of the cardholder agreement [continue to] apply").

The magistrate judge's analyses, which are adopted as those of the District Court, dictate that Mr. Azur is bound by the 1999 arbitration amendment. Nothing in the Plaintiff's original or supplemental filings demonstrates the contrary. Although counsel complains that MBNA has failed to "produce documentation reflecting what was sent to [the] Plaintiff" in connection with the 2003 upgrade, *see* Doc. 28 at 3, they have failed to show

-5-

under the law that the Defendant's sworn statements, on personal
knowledge, are insufficient to establish the arbitration
provision remained unaffected.   Nor have they shown that
Mr. Pyle's verification was required to "provide information
concerning" his "title, credentials" and qualification to swear,
on personal knowledge and under oath, that the 2003 upgrade did
not eliminate the need for arbitration.   *See id.*[1]

In sum, MBNA has demonstrated that Mr. Azur is bound by the
1999 arbitration provision.   And though the Defendant requests a
dismissal of the Plaintiff's case, *see* Def.'s Mot. at 9, Third
Circuit law mandates a stay.   *Compare* Lloyd v. Hovensa, LLC,
369 F.3d 263, 269 (3d Cir. 2004) ("a district court [has] no
discretion to dismiss a case where one of the parties applies for
a stay pending arbitration") *with* Pl.'s Opp'n Br. (Doc. 9) at 5
(requesting that, if Defendant's Motion to compel arbitration be
granted, action be stayed).

For all of the reasons stated above, as well as those in the
magistrate judge's prior rulings (which are adopted by the
District Court and incorporated here by reference),
the Court enters the following:

---

[1]   Notably, Affiant Simpkins also has sworn that the 2003 upgrade did
not affect the arbitration provision.   *See* discussion *supra*; *see also*
Simpkins Aff. at ¶¶ 1-2 (identifying affiant as Vice President of
entity doing business under name MBNA, and confirming her statements
were made on personal knowledge).

## II.  **ORDER**

The Defendant's Motion to compel arbitration (**Doc. 6**)

is **GRANTED**, and this case is **STAYED** under 9 U.S.C. § 3 until

arbitration is had in accordance with the terms of the

arbitration agreement.  IT IS FURTHER ORDERED that this case is

**ADMINISTRATIVELY CLOSED.**[2]

THESE THINGS ARE SO ORDERED on this _____ day of

_____, 2007.

Donetta W. Ambrose
Chief U.S. District Court Judge

cc (via email):

Kurt A. Miller, Esq.
Kevin L. Barley, Esq.
Kevin K. Douglass, Esq.
Joe N. Nguyen, Esq.
Perry A. Napolitano, Esq.
Felicia Y. Yu, Esq.

---

[2]  Administrative closings are a familiar, although *ad hoc*, manner in which courts remove cases from their active dockets without the entry of a final adjudication.  *See* Corion v. Corp. v. Chen, 964 F.2d 55, 56-7 (1st Cir. 1992) (an order administratively closing a case is not a final, appealable order); *cf. also generally* Lloyd, 369 F.3d at 270 (under FAA § 16, "whenever a stay is entered under § 3, the party resisting arbitration is expressly denied the right to an immediate appeal") (footnote omitted).

-7-